(33 App. Div. 171.)

### NEWMAN v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, First Department. August 10, 1898.)

1. NONSUIT—VARIANCE.
    If, in an action for damages caused by negligence, in which the complaint charges certain acts as constituting that negligence, the plaintiff does not prove those acts, but, without objection, proves others, which give rise to a presumption of negligence, the defendant, in the absence of a claim that he was thereby misled, is not entitled to a nonsuit on the ground that no evidence of negligence was given.

2. CARRIERS—INJURY TO LIVE STOCK.
    In an action to recover damages for injury to a horse through the alleged negligence of a railroad company in one of whose cars the horse was being carried, proof that the injury was occasioned by a sudden stopping of the car, so violent that a wooden bar in front of the horse was broken in two, and two halters secured to the top of the car were snapped, and the horse thrown down and his back broken, and that employés of the company at once entered the car to see if injury had been done, raises a presumption of negligence on the part of the company.

Appeal from trial term, New York county.

Action by John H. Newman against the Pennsylvania Railroad Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

James M. Kerr, for appellant.

Henry G. Ward, for respondent.

PATTERSON, J. This action was brought to recover damages for injuries to a race horse, the property of the plaintiff, while such horse was in the custody of the defendant, a common carrier, and was being transported from Jersey City to Gloucester, in the state of New Jersey. At the time the horse was put upon the defendant's car a receipt or bill of lading was handed to the plaintiff, by the terms of which the defendant was exempted from liability for injury to the animal, except such as should arise from gross negligence. One of the defenses is based upon the terms of that receipt, which was put in evidence upon the trial and forms part of the proofs. It was shown by the plaintiff that the horse was placed in a car which had been prepared for its reception, pieces of timber or joists having been arranged to form a stall, one piece of joist being placed crosswise in front of the horse. The animal was tied with a halter, and a rope running from each side of its head to the top of the car. When the train, of which the car formed a part, reached Newark, in New Jersey, it came to a sudden stop. The horse was thrown forward with violence against the joist in front of it, and the joist broke. The ropes by which the horse's head was secured parted, and the horse fell. Its back was broken, and when the train reached Gloucester it was necessary to kill the animal before it could be removed from the car. At the close of the plaintiff's case the complaint was dismissed on the ground, apparently, that negligence of the defendant or its servants was not shown, and this appeal is from the judgment dismissing the complaint.

The contract was made and was to be performed in the state of New Jersey, and the plaintiff insists that, to entitle him to recover, it was only necessary for him to show the defendant's undertaking to transport the horse, its delivery for transportation, and the fact that it was injured while being carried. That view of the case cannot be sustained upon the plaintiff's complaint. He has sued for negligence only, and he has stated in his complaint the facts constituting the alleged negligence and the proximate cause of the injury to the horse. It is alleged that the defendant did not perform its undertaking and duty as a common carrier safely to transport the said horse of the plaintiff from Jersey City to Gloucester, but, on the contrary, the defendant, its servants and agents, in violation of its said undertaking and duty, so wrongfully, carelessly, negligently, and unskillfully managed, controlled, and operated its freight car, etc., that while the said defendant, its agents or servants, were shifting or taking on cars at Newark, N. J., during the trip from Jersey City to Gloucester aforesaid, the said car containing the plaintiff's said horse was caused to collide with and struck against other cars of the defendant, in such a violent, unskillful, careless, and reckless and improper manner that the plaintiff's said horse was thrown down in the car, its back was broken by reason of the force of the shock of the said collision, and it became necessary to terminate its life to relieve it of its misery, and because thereof the said horse was thereby rendered worthless to the plaintiff. ·

The action, therefore, is one purely for negligence, and, upon a strict trial of the cause, the plaintiff might not have recovered, unless he proved the allegations of his complaint substantially as they were made. There is no proof in the record of any such particular carelessness as that charged in the complaint to be the proximate cause of the injury. It was not shown that there was any shifting of cars, nor that there was any collision. It has been held that where, in a complaint, the proximate cause of an injury is alleged to be one thing, proof of something else as the proximate cause is not allowable under objection; and that where an objection is properly taken to proffered evidence of some proximate cause other than that alleged in the complaint, and there is no amendment of the pleading, a judgment entered upon a verdict based upon such evidence will be reversed. Woolsey v. Trustees, etc., 69 Hun, 489, 23 N. Y. Supp. 410, and cases there cited. But the peculiarity of this case is that, although no evidence was given of the proximate cause stated in the complaint, testimony came in, without objection, of a cause to which the injuries to the plaintiff's horse are to be ascribed. One of the witnesses swore that he was in the car in charge of the horse for the plaintiff; that the train was proceeding at a rapid rate of speed, and "it came to a stoppage all at once, and the horse that fell was riding forward, and just as soon as the train came to a stop the horse fell across my legs, and just as soon as I could I got them from under him, and by that time the train came to a standstill, and the trainmen came into my place to look if anybody was hurt, and they looked in and asked if anybody was

hurt, and I said, 'Yes; it looks like it;' so they got in and tried
to get the horse up." The same witness testified that the ropes
referred to broke, and the joist broke. "The joist came in two
pieces,—open in splinters." That evidence, such as it was, of
the occurrence, indicated that it was the sudden stopping of the
train that caused the injury. The horse was riding with his
head towards the locomotive, and the inference is plain that,
by the sudden checking of the momentum of the train, it was
thrown forward with so much force as to break the barrier in
front of it, and the ropes by which its head was secured. That
was an entirely different cause, so far as the specification of negli-
gence is concerned, from the one alleged in the complaint, and
therefore there is a variance between the proof and the allegations.
As said before, if this had been objected to in time, or if a
motion had been made to strike it out, it could have had no in-
fluence in the case; but it remained in the case, and, being in
support of the general allegation of negligence, it could not be
disregarded. The Code of Civil Procedure provides for such a
case. Section 539 of that Code declares that a variance between
an allegation in the pleading and the proof is not material, un-
less it has actually misled the adverse party to his prejudice in
maintaining his action or defense upon the merits. If a party
insists that he has been misled, that fact, and the particulars in
which he has been misled, must be proved to the satisfaction of
the court, and thereupon the court may, in its discretion, order
an amendment. There is nothing in this record to show that the
defendant was misled in any way by this evidence. No claim to
that effect was made. The evidence was allowed to stand as
the plaintiff's proof of the facts relied upon as establishing neg-
ligence, which was the gravamen of his action. The motion to
dismiss the complaint was made on the ground that the evidence
failed to show any negligence on the part of the defendant, and
that motion was granted. We think the testimony above re-
ferred to, of the attendant who was in the car in charge of the
horse, was sufficient to make it incumbent upon the defendant
to show something in exoneration or excuse. The train was go-
ing at a rapid rate. The horse had been carefully secured in the
stall. In front of it was the barrier above described, and the
horse's head was secured by ropes, in the manner indicated. The
train stopped so suddenly that the direct effect of stoppage was
to throw the horse forward with such violence as to break the
joist in two pieces, and snap the ropes by which its head was se-
cured. That condition of the evidence speaks for itself, and pre-
sents one of those cases in which a presumption arises that, with
proper management of the train, in slackening its speed, such an
extraordinary result could not have occurred. The cause of ac-
tion alleged in the complaint must be regarded as one purely in
negligence, although a contractual relation existed between the
parties, and here, as in all actions of negligence based upon alleged
misconduct of servants in the operation of machinery of trains,
the burden of proof is upon the plaintiff to establish the negligent

acts by a preponderance of evidence. But that obligation of a plaintiff is met when evidence is given sufficient to raise a presumption of negligence, and that presumption may arise from proof of a state of facts showing a situation which could not have arisen but from the existence and operation of some abnormal cause. The rule is well stated in a few words in the opinion of the court in Cosulich v. Oil Co., 122 N. Y. 127, 25 N. E. 261: "Sometimes the duty which the defendant owes to the plaintiff is of such a nature that proof of the happening of the accident under certain circumstances and given conditions will be of such legal value as to afford presumptive evidence of negligence, and cast upon the defendant the burden of explanation." It is true that this rule has been applied most frequently in cases involving injuries to persons, and that is especially noticeable in actions against carriers. But it is not to be confined to such cases. It is a rule of evidence applicable to the establishment of the affirmative of an issue where negligence is the foundation of the action. Whether the injury is to person or to property can make no difference as to a rule which relates exclusively to a presumption arising from proven facts. It is doubtless true that such surrounding circumstances must be shown as necessarily give rise to the presumption, and I know of no better statement of the rule than that formulated in Scott v. Docks Co., 3 Hurl. & C. 596, viz.:

"There cannot be a recovery without reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

The circumstances of the occurrence giving rise to this action are of the most unusual character. A horse, firmly secured in the manner described, is, by the sudden stopping of a train, thrown forward with such violence as to break the guards and barriers by which it is secured, and sustains fatal injuries. The violence was so great that the train hands, immediately the train stopped, went about to make inquiry whether any one was injured in the car. If there are any cases in which a presumption of negligence arises against a carrier of animals, the facts here shown present one of them.

What, then, is the practical situation? The plaintiff sues for damages caused by negligence. He charges certain acts as constituting that negligence. He does not prove them, but, without objection, shows other facts which give rise to a presumption of negligence. The defendant does not claim to have been misled by that evidence. A nonsuit is granted apparently on the ground that no evidence of negligence was given. In my judgment, that was error. If the point of variance had been taken, an amendment could have been allowed, in the discretion of the court.

The judgment should be reversed, and a new trial ordered, with costs to abide the event. All concur; RUMSEY, J., in result.